ENOS M. HENKLE *et al.*, Plaintiffs in Error, *v.* BENJAMIN SMITH *et al.*, Defendants in Error.

### ERROR TO MACON.

Where property is sold without any time being specified for the delivery or payment, the law implies that the delivery is to be within a reasonable time, and that the delivery and payment are to be concurrent acts. What is a reasonable time, is a question for the jury.

If the place of delivery is different from that of the residence or place of business of the vendee, he must be notified of such delivery.

Where it was proved that the defendant had corrected the price current in a newspaper, files of the paper were properly admitted in evidence against him, to prove the market value of grain.

BENJAMIN M. SMITH and others, as partners, commenced an action of assumpsit against Henkle and others, as partners, in the Macon Circuit Court, EMERSON, Judge; filed their declaration, alleging in first count, that on the 25th of August, 1857, plaintiffs below had sold to defendants below their whole crop of wheat for a price therein named, the same to be of fair quality for the season, and to be delivered at Macon Station, on the Illinois Central Railroad, in a reasonable time thereafter, and to be paid for on the 1st day of December thereafter; and they

aver that they offered and tendered the said wheat at the said Macon Station within a reasonable time, and that defendants below refused to accept the same.

In the second count the same allegations are made, except the averment is made that the wheat was to be paid for on delivery.

Third count for goods bargained, sold and delivered.

Fourth count for goods bargained and sold.

Fifth count for money due on account stated.

At July term, 1858, on a plea of non-assumpsit, the cause was tried by a jury, and a verdict was rendered for plaintiffs below for $452.81.

The bill of exceptions shows that *John S. Williams*, for plaintiffs below, testified that in August or September, 1857, he heard a conversation between Smith and Condell, parties to suit. The point in controversy was in relation to the payment of freight upon wheat from Macon Station to Decatur, and as to when the wheat was to be delivered; it was finally conceded, by Condell, that the wheat was to be delivered at Macon Station, and that defendants below would pay the freight.

*J. G. White* testified, that he heard Smith ask Condell, one of defendants below, if it was not the contract that they, defendants below, should take from them, plaintiffs below, good fair wheat for the season, that they should take their whole crop of wheat, and that the same was to be delivered at Macon Station, and pay $1.15 per bushel for white fall wheat, and $1.05 for red fall wheat, and 85 cts. for the spring wheat. Condell said that was the contract.

*John Rickets* testified, that he conversed with Condell relative to the wheat of Smith and Stoner; that Condell remarked that plaintiffs below had cleaned the wheat and made it all right, and they would take it.

*Levering* testified, that the defendants below had received from Macon Station, wheat shipped by plaintiffs, amounting to 54,314 lbs. of wheat; that on 6th November, 1857, plaintiffs had shipped from Macon Station to defendants, to Decatur, Illinois, wheat to the amount of 41,126 lbs., all of spring wheat, and that the defendants had refused to accept the same, and that the wheat was then taken by plaintiffs.

*Freese* testified, that the plaintiffs brought the wheat to his warehouse to clean for them; that it was about 663 bushels after it was cleaned.

*Mr. Eads* testified, that he hauled some of the wheat from the farm of plaintiffs to Macon Station, and the wheat last hauled was of the same quality as first wheat hauled. The last

wheat I hauled made one car load and another full of wheat which I did not see loaded; the spring wheat was sent to Decatur, and as I understood, the defendants refused to receive it; there was then over 400 bushels of wheat at Macon Station, and some wheat left on the farm of plaintiffs, which was not hauled to Macon Station.

*Mr. Oldham* testified, that he hauled 400 bushels or over to Macon Station before 1st December; that there was still left on the farm some wheat; the last wheat delivered at the station was of same quality as first wheat delivered.

*Priest* testified, that he bought from Smith and Stoner 663 bushels of spring wheat, for which he gave 45 cts. per bushel; that spring wheat was worth, about 1st December, 1857, from 50 cts. to 60 cts. per bushel, and winter wheat on 1st December, from 40 cts. to $1.20 per bushel.

*Mr. Can* testified, that 3rd December he delivered to Mr. Condell a copy of the following notice:

> *Macon Station, Nov. 30th,* 1857.
>
> Received of Smith & Stoner, to be shipped to Henkle & Condell, the following lots and kinds of wheat, viz:
>
> Of red fall, 3,358 lbs.; of white fall, 12,224 lbs.; of spring, 10,518 lbs.
>
> J. S. RUBY, *Agent.*

> MESSRS. HENKLE & CONDELL.—Sirs: You will see by the above, that the above amounts of wheat are ready for your reception at Macon Station.
>
> SMITH & STONER.

The defendants objected to above notice being read to the jury, but the objection was overruled, and the defendants excepted.

*A. J. Davis* testified, that he was one of the proprietors of the Decatur Weekly Gazette, and that defendants below corrected the weekly reports of market prices of grain, etc., for said newspaper.

*S. Taylor* testified, that he carried the paper to defendants below every week for correction of market reports; sometimes the reports were changed by one of the defendants, and sometimes they were permitted to stand as they were, and sometimes did not see either of the defendants, but submitted to the clerks.

Plaintiffs below introduced several numbers of said paper from November 4th to December 2nd, to show the price of grain during the same period in Decatur; to the introduction of which, defendants below objected.

The defendants below introduced, as a witness, *J. D. Henkle,* who testified that the wheat received by defendants from plain-

tiffs weighed light; that defendants received from plaintiffs 616 $\frac{14}{60}$ bushels of red fall wheat, 250 $\frac{53}{60}$ bushels of white fall wheat, and 12 bushels of spring wheat.

*J. S. Ruby* testified, that the wheat that was shipped by him on 6th November, for plaintiffs below, to Decatur, was in bags; that the wheat afterwards brought to the station was wet; it was sticky and clammy; that he only examined a few of the bags and found the wheat to be in them as stated.

Errors assigned are: 1st, The court erred in admitting improper evidence; 2nd, The court erred in overruling motion for new trial; 3rd, The court erred in rendering final judgment for plaintiffs below.

GALLAGHER, WAIT & OGLESBY, for Plaintiffs in Error.

A. B. BUNN, and J. W. POST, for Defendants in Error.

WALKER, J. It was urged that the court below erred in admitting the notice given by plaintiffs below, to the defendants, that a portion of the wheat had been delivered at Macon station, and was ready for their acceptance. The evidence fails to show that this wheat was to be delivered by a specified time, and the law implies under such circumstances, an obligation to deliver in a reasonable time. Whether it was delivered in a reasonable time, was a question of fact for the jury, to be determined by all the circumstances in evidence. This notice to defendants could not have been properly rejected, as it tended to fix the time of its delivery and notice of that fact to defendants. The contract required plaintiffs to deliver this wheat at that station, and we can see no objection to giving this notice to defendants, that it had been so delivered, or to their proving that fact. The notice and the proof of its service could, in no way, prejudice the defendants, and as there was no time fixed for the delivery or for the payment of the price, the delivery and payment were concurrent acts, and plaintiffs would have no right to recover the money until it was delivered at the place agreed upon, and the defendants had notice. And as the place of delivery was not that of the residence or business of defendants, such notice could not be inferred from a mere delivery. The proof of this notice was properly admitted in evidence.

It was also urged that the court erred in admitting the price current contained in the several numbers of the Decatur Weekly Gazette. Before they were introduced, there was evidence before the jury, that the defendants or their clerk, were in the habit of correcting these prices current every week. This connected defendants with this weekly report of the market at

16

Decatur, and they were equivalent to admissions of defendants. Again, witnesses testified to the same fact, which was clearly legitimate, and the evidence of the Gazette was only cumulative, and could not, even if inadmissible, have misled the jury. We see no force in this objection.

The other questions, as to whether the wheat was delivered in a reasonable time, and whether the entire crop of wheat was delivered, were questions of fact for the determination of the jury. They have found both questions in favor of the plaintiffs below ; and from all the evidence before them, we are not prepared to hold that their finding is so manifestly against the weight of evidence as to require the verdict to be set aside.

There is no objection perceived to the instructions given, nor do we perceive any error in this record, for which the judgment of the court below should be reversed, and it is therefore affirmed.

*Judgment affirmed.*